## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 18 2020, 9:59 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Robert J. Palmer
May • Oberfell • Lorber
Mishawaka, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Stanley C. Kinkade and Sherry Kinkade, <br> *Appellants-Plaintiffs,* <br><br> v. <br><br> Jason Silvey and Jennifer Silvey, <br> *Appellees-Defendants.* | March 18, 2020 <br><br> Court of Appeals Case No. 19A-CC-2565 <br><br> Appeal from the Madison Circuit Court <br><br> The Honorable Andrew R. Hopper, Judge <br> The Honorable Christopher A. Cage, Master Commissioner <br><br> Trial Court Cause No. 48C03-1601-CC-19 |

**Bradford, Chief Judge.**

# Case Summary

[1] Stanley and Sherry Kinkade (collectively, "Appellants") purchased a trailer from Jason and Jennifer Silvey (collectively, "Appellees") during the early part of 2015. At some point after completing the purchase, Appellants discovered damage to the trailer, which they claim should have been disclosed by Appellees at the time of the sale. In January of 2016, Appellants filed suit against Appellees, alleging misrepresentation and breach of contract. Following a bench trial, the trial court entered judgment in favor of Appellees. Appellants challenge the trial court's judgment, arguing that they proved their claims against Appellees. Because we disagree, we affirm.

# Facts and Procedural History[1]

[2] The trial court's presentation of the underlying facts provide as follows: In late January/early February of 2015, Appellees sold a Coachman camper trailer to Appellants. The trailer was approximately seven years old and was located in the Dry Dock Campground in Huntington. Appellees cited their declining use of the trailer as the reason behind their decision to sell it. Appellants sought to purchase the trailer in order to spend more time with family "already located in the campground." Appellants' App. Vol. II p. 17.

---

[1] Appellants rely on the trial court's factual findings in their statement outlining what they deem to be the relevant facts. Given that the parties have not provided this court with a copy of the transcript of the July 31, 2019 bench trial, we will do the same.

[3] Per campground rules, the sale of any trailer, which was sold and was to remain at the campground, was required to be conducted through the campground owner Kay Fetter as the go between. In that capacity, Fetter handled communications and paperwork related to the transaction in exchange for a ten percent commission. After learning of Appellees' intent to sell the trailer, Fetter inquired as to whether Appellees had noticed any leaks or other problems. Jennifer Silvey replied that "everything works inside and there has [sic] been no leaks." Appellants' App. Vol. II p. 17.

[4] Appellees last used the trailer in warmer weather and with all sides extended in the Fall of 2014. Appellants went to the campground and viewed the trailer in January of 2015. At the time, it was very cold and "no electricity was active to the trailer." Appellants' App. Vol. II p. 18. Also at the time of the viewing, Fetter conveyed Jennifer Silvey's statement regarding the condition of the trailer to Appellants and the record indicates that the floors of the trailer were hard. Appellants walked around the entire trailer and did not notice any damage or problems with Sherry Kinkade saying "everything looked good." Appellants' App. Vol. II p. 18. Appellants did not, however, extend the slide outs or ask that they be extended.

[5] After purchasing the trailer, Appellants next visited the trailer in either March or April of 2015. On this visit, they extended the sides of the trailer and found a large mushroom growing but did not notice any other problems apart from "a mildew smell." Appellants' App. Vol. II p. 19. However, Appellants claim that the next morning they discovered "a moldy smell" and "soft spots" in the floor

under the carpeting. Appellants' App. Vol. II p. 19. A week or so later, Fetter inspected the trailer. She observed that the carpet and flooring felt soft but did not notice any smell or odor. Appellants subsequently determined that they were unable to use the trailer due to the damage.

In January of 2016, Appellants filed suit against Appellees, alleging misrepresentation and breach of contract. A bench trial was held on July 31, 2019, during which the parties offered competing expert testimony regarding the cause of the damage. On August 26, 2019, the trial court entered judgment in favor of Appellees. Appellants subsequently filed a motion to correct error, which was denied by the trial court on October 5, 2019.

# Discussion and Decision

Initially, we note that Appellees have not filed an appellate brief.

> "When the appellee has failed to submit an answer brief we need not undertake the burden of developing an argument on the appellee's behalf." *Trinity Homes, LLC v. Fang*, 848 N.E.2d 1065, 1068 (Ind. 2006). "Rather, we will reverse the trial court's judgment if the appellant's brief presents a case of prima facie error." *Id.* (citing *Gibson v. City of Indpls.*, 242 Ind. 447, 448, 179 N.E.2d 291, 292 (1962)). "Prima facie error in this context is defined as, 'at first sight, on first appearance, or on the face of it.'" *Id.* (citing *Santana v. Santana*, 708 N.E.2d 886, 887 (Ind. Ct. App. 1999)). "Where an appellant is unable to meet this burden, we will affirm." *Id.*

*Fifth Third Bank v. PNC Bank*, 885 N.E.2d 52, 54 (Ind. Ct. App. 2008).

[8] Appellants indicate that the trial court's factual findings and conclusions thereon were entered *sua sponte*. In such cases, "'the findings control our review and the judgment only as to the issues those specific findings cover. Where there are no specific findings, a general judgment standard applies and we may affirm on any legal theory supported by the evidence adduced at trial.'" *Estate of Henry v. Woods*, 77 N.E.3d 1200, 1204 (Ind. Ct. App. 2017) (quoting *Samples v. Wilson*, 12 N.E.3d 946, 949–50 (Ind. Ct. App. 2014)).

> We apply a two-tier standard of review to the sua sponte findings and conclusions. [*Samples*, 12 N.E.3d] at 950. First, we determine whether the evidence supports the findings and second, whether the findings support the judgment. *Id.* We will set aside findings and conclusions only if they are clearly erroneous, that is, when the record contains no facts or inferences supporting them. *Id.* In conducting our review, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom. *Id.* We do not reweigh the evidence nor do we assess witness credibility. *Id.*

*Id.*

[9] Further, because Appellants did not prevail at trial, they appeal from a negative judgment.

> A judgment entered against a party who bore the burden of proof at trial is a negative judgment. *Garling v. Ind. Dep't of Natural Res.,* 766 N.E.2d 409, 411 (Ind. Ct. App. 2002). On appeal, we will not reverse a negative judgment unless it is contrary to law. *Mominee v. King,* 629 N.E.2d 1280, 1282 (Ind. Ct. App. 1994). To determine whether a judgment is contrary to law, we consider the evidence in the light most favorable to the appellee, together

with all the reasonable inferences to be drawn therefrom. *J.W. v. Hendricks Cnty. Office of Family & Children,* 697 N.E.2d 480, 482 (Ind. Ct. App. 1998). A party appealing from a negative judgment must show that the evidence points unerringly to a conclusion different than that reached by the trial court. *Mominee,* 629 N.E.2d at 1282.

*Smith v. Dermatology Assocs. of Fort Wayne, P.C.*, 977 N.E.2d 1, 4 (Ind. Ct. App. 2012).

# I. Misrepresentation

[10]     Appellants contend that the trial court erred in finding that they failed to prove their claim of misrepresentation. We note that while Appellants' appellate brief presents their misrepresentation claim as a claim of negligent misrepresentation, both the trial court's judgment and Appellants' trial brief treat the misrepresentation claim as one of fraudulent misrepresentation. Given that Appellants and the trial court treated the misrepresentation claim as a claim of fraudulent misrepresentation at the trial-court level, we will treat the claim as such on appeal.

[11]     [T]o establish a cause of action for fraudulent misrepresentation Buyer must demonstrate: (1) Sellers made false statements of past or existing material facts; (2) Sellers made such statements knowing them to be false or made them recklessly without knowledge as to their truth or falsity; (3) Sellers made the statements to induce Buyer to act upon them; (4) Buyer justifiably relied and acted upon the statements; and, (5) Buyer suffered injury.

*Verrall v. Machura*, 810 N.E.2d 1159, 1162 (Ind. Ct. App. 2004). In entering judgment in favor of Appellees, the trial court determined that while Appellants successfully proved the first, third, fourth, and fifth elements, Appellants failed to prove the second element, *i.e.*, that Appellees made the statements regarding the condition of the trailer "knowing them to be false or made them recklessly without knowledge as to their truth of falsity." *Id.* Appellants assert that this determination is clearly erroneous. We disagree.

[12] With respect to the second element, the trial court reached the following conclusion:

> Now turning to the second and dispositive element concerning whether [Appellees'] statements were made by them knowing them to be false or recklessly without knowledge as to their truth or falsity. Put differently, it is not enough for [Appellants] to establish that the leak had be going on for a long time prior to the sale. They must prove that [Appellees] had actual knowledge or should have had knowledge of the damage at the time of the representations.
>
> Based upon the record presented to the Court, it cannot conclude that [Appellants] established by a preponderance standard; that [Appellees] had actual knowledge of the structural problems with the trailer at the time they sold the trailer to [Appellants]. There was no evidence presented by [Appellants] to show that [Appellees'] denials of any knowledge of leaks prior to the sale was intentionally or recklessly made. Jason Silvey testified emphatically that he never observed any evidence of any leaks; nor repaired any stains or other damage by water. No evidence of prior repairs, or prior damage was tendered. [Appellants'] expert witness acknowledged that even if the damage had occurred over a long period of time, the evidence of that damage

can appear over a short period of time if the conditions are right.

Failing the establishment of actual knowledge, the burden of proof was upon [Appellants] to alternatively establish that [Appellees] should have known of the existence of leaks or damage to the trailer; or that their statements were recklessly made. The Court finds that [Appellants] did not present sufficient direct or circumstantial evidence to meet this burden concerning the pre-sale condition of the trailer. No eyewitnesses, photographs, documentation ever were presented to prove to the Court that [Appellees] had prior knowledge that the existence of a leak or damage was present. Further, the only visible damage other than the mushroom in the slide out was that damage [that] was visible after the carpet was pulled up. There was no evidence that [Appellees] ever had reason to pull up or replace carpet or that the mushroom which was found growing, was present at the time [Appellees'] closed the trailer for the fall of 2014.

The absence of evidence that [Appellees] knew or ought to have known of the damage to the floor of the camper or the mushroom is fatal to [Appellants'] ability to prevail under a theory of fraud.

Appellants' App. Vol. II pp. 22–23. Again, Appellants bore the burden to prove that the evidence points "unerringly to a conclusion different than that reached by the trial court." *Smith*, 977 N.E.2d at 4. Appellants have failed to carry this burden. As such, based on the limited record presented on appeal, we cannot say that the trial court's conclusions are clearly erroneous.

## II.  Breach of Contract

[13]  Appellants also contend that the trial court erred by failing to rule on their breach-of-contract claim.  Specifically, Appellants argue that their trial brief "addressed only one of the two causes of action raised in their Complaint, i.e. breach of contract.…  Despite [Appellants'] focus on the breach of contract claim, the trial court's Judgement in favor of [Appellees] does not mention the breach of contract claim."  Appellants' Br. p. 12.  Appellants' trial brief, however, did not address a breach-of-contract claim but rather included a detailed discussion of a prior decision involving a breach-of-warranty claim.  Appellants' App. Vol. II pp. 30–34 (discussing *Art Hill, Inc. v. Heckler*, 457 N.E.2d 242 (Ind. Ct. App. 1983)).  We have previously noted that "[a]lthough closely related, the two actions are not identical."  *Nelson v. Marchand*, 691 N.E.2d 1264, 1271 n.8 (Ind. Ct. App. 1998).  As such, we cannot agree with Appellants' assertion that their trial brief addressed their breach-of-contract claim.

[14]  Further, as is noted above in footnote 1, the parties did not provide us with a copy of the transcript of the bench trial.  Thus, while Appellants' complaint for damages includes a breach-of-contract claim, we are unable to determine from the record presented on appeal whether Appellants fully developed this claim before the trial court.  Without some indication from the record that Appellants

did develop the breach-of-contract claim, we are unable to conclude that the trial court erred by failing to include a ruling on this claim in its judgment.[2]

[15] The judgment of the trial court is affirmed.

Robb, J., and Altice, J., concur.

---

[2] Furthermore, we do not agree with Appellants' assertion that the trial court's factual findings "establish [Appellees'] liability for breach of contract." Appellants' Br. p. 8.